IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE MADDEN, as Parent and Natural Guardian and Administrator of the Estate of MYKENZIE MADDEN, a minor, deceased | : : : : : | CIVIL ACTION |
| v. | : : | |
| THE A.I. DUPONT HOSPITAL FOR CHILDREN OF THE NEMOURS FOUNDATION, WILLIAM I. NORWOOD, M.D., PH. D., and CHRISTIAN PIZARRO, M.D. | : : : : : | NO. 05-787 |

## MEMORANDUM ON DEFENDANT WILLIAM I. NORWOOD, M.D., PH. D.'S MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                                     December 24, 2009

I.   **Introduction**

Plaintiff Michelle Madden ("Madden"), as parent, natural guardian, and administrator of the estate of the deceased Mykenzie Madden ("Mykenzie"), brings wrongful death and negligence (Counts III and IX), and lack of informed consent (Count VI) claims against Defendants William I. Norwood, M.D., Ph. D. ("Dr. Norwood") and Christian Pizarro, M.D. ("Dr. Pizarro").[1] Presently before the Court is Dr. Norwood's Motion for Summary Judgment (Docket No. 67) seeking to dismiss all remaining claims against him in Plaintiff's Complaint,

---

[1] Madden's Complaint included several other counts that have since been dismissed. Judge Kauffman, who presided over this case before it was reassigned to the undersigned, dismissed Madden's claims under the Rehabilitation Act, 29 U.S.C. § 701, et seq. (Count VII) (Docket No. 44). The parties stipulated to dismiss Madden's claims of fraud and conspiracy (Count I), wrongful death and negligent supervision (Count II), negligent infliction of emotional distress (Count IV), and negligent supervision and retention (Count VIII) (Docket No. 70). In addition, the parties' stipulation dismissed all claims, including wrongful death and negligence (Count V) and negligence (Count X) claims, against other then-named Defendants.

pursuant to Federal Rule of Civil Procedure 56.[2]  Oral argument was held on December 17, 2009.  For the reasons that follow, Dr. Norwood's Motion for Summary Judgment will be granted.

## II.   Factual & Procedural Background

Taking Madden's allegations as true, the relevant facts are set forth as follows.  Madden is the mother of Mykenzie, who was born on February 17, 2003, was diagnosed with serious heart conditions—Double Outlet Right Ventricle with hypoplastic left ventricle and intact atrial septum—and passed away on September 3, 2003, following two open-heart surgeries that were performed at the Dupont Hospital.  (Compl. ¶¶ 3, 12.)  Madden, a New Jersey resident, brought Mykenzie to Delaware to have her treated by Dr. Norwood and to undergo a three-stage surgical procedure.  (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. H.)  Dr. Pizarro and Dr. Norwood were two cardiac surgeons at Dupont Hospital who operated on Mykenzie.  (Compl. ¶ 22.)

On February 21, 2003, four days after Mykenzie was born, Dr. Pizarro performed the first surgery.  (Compl. ¶ 15.)  On August 22, 2003, Dr. Pizarro and Dr. Norwood, who were listed on Mykenzie's medical charts as primary and assistant surgeons, respectively, performed the second surgery, a hemi-fontan procedure.  (Def.'s Mot. for Summ. J., Ex. A, at 1.)[3]  Madden alleges that

---

[2]Madden filed a Motion to Consolidate this case with Papacoda v. The A.I. Dupont Hosp. for Children of the Nemours Found., No. 05-3003 (Docket No. 75), and the parties filed cross-Motions in Limine seeking to exclude certain evidence at trial (Docket Nos. 68-69).  The Court will address these Motions in separate Memoranda and Orders.

[3]Although Madden's Complaint alleged that Dr. Norwood was "the primary surgeon who operated on" Mykenzie (Compl. ¶ 6), it also alleged that Mykenzie was "taken to surgery by Dr. Pizarro with the assistance of Dr. Norwood," (Compl. ¶ 19) and Madden subsequently conceded that "Dr. Pizarro was listed as the primary surgeon and Dr. Norwood assisted during the surgery" (Mem. of Law in Opp'n to Mot. for Summ. J. ¶ 4, Docket No. 72).  This Court will address Madden's remaining contention that Dr. Norwood continued to maintain a supervisory role over

2

Drs. Pizarro and Norwood's use of a "dangerous" and "risk[y]" "'cooling strategy' on cardiopulmonary bypass and for circulatory arrest" during the first two stages of Mykenzie's surgical procedure, and "failure to perform the appropriate surgeries" fell below the standard of care, resulting in Mykenzie's "preventable death." (Compl. ¶¶ 118-121.) Madden also alleges that she was never informed of the high risk, varying success rates, and experimental nature of the cooling strategy and circulatory arrest procedure used on Mykenzie, nor given a choice to refuse such a procedure, and that she "justifiably relied to her detriment" upon Drs. Norwood and Pizarro's expertise. (Compl. ¶¶ 140-42, 151.)

The parties have completed discovery. On September 15, 2009, Dr. Norwood filed this Rule 56 Motion for Summary Judgment, seeking to dismiss Counts III, VI, and IX against him.

### III. Jurisdiction and Legal Standards

#### A. Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), since the parties are citizens of different states and the amount in controversy exceeds $75,000. Venue is appropriate under 28 U.S.C. § 1391(a).

#### B. Choice of Law

When a federal district court presides over a case grounded in diversity jurisdiction, the court "must apply the choice-of-law rules of the forum state." LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir.1996) (citing Klaxon v. Stentor Elec. Mfg., 313 U.S. 487, 496 (1941)). Delaware law applies here and the parties do not dispute which forum state's law applies. (Compl. ¶¶ 114, 199; Def.'s Mot. for Summ J. 5-6.) Accordingly, this Court will apply Delaware

---

the surgery in the Discussion Section of this Memorandum.

3

law to Madden's claims against Dr. Norwood.

**C.      Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule[ ] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

**IV.     Discussion**

Madden brings two counts against Dr. Norwood for medical negligence (Counts III and IX) and one for lack of informed consent (Count VI). Dr. Norwood's motion for summary judgment seeks to dismiss all three counts.

### A. Negligence

Under Delaware law, in a medical negligence case, "the plaintiff bears the initial burden of presenting expert medical testimony as to both the alleged deviation from the applicable standard of care and the causal connection between the wrongful conduct and the alleged injury." Burkhart v. Davies, 602 A.3d 56, 59 (Del. 1991); see also 18 Del. C. § 6853; McCusker v. Surgical Monitoring Assocs., 299 F. Supp. 2d 396, 398 (D. Del. 2004).

#### 1. The Parties' Contentions

Dr. Norwood avers that "[i]t is undisputed that Dr. Pizarro was the surgeon in charge of Mykenzie's surgeries," meaning that he "orchestrate[d] the conduct of the surgery," including "perform[ing] the operation and direct[ing] the cooling and bypass procedures (the parts of the operation that are criticized by plaintiffs)," whereas "Dr. Norwood merely assisted . . . in the second operation," which entails only "exposing the surgical area" (Def.'s Mot. for Summ. J. 6-7). Dr. Norwood thereby contends that Madden failed to show any fact from which the jury could determine that Dr. Norwood was in charge of the surgery.

In response, Madden contends that summary judgment relief is inappropriate because Dr. Norwood's "superior experience with the procedure and his role as the team leader" suggest that Dr. Norwood in fact had a "supervisory role" over the surgery, as Madden's expert, Joseph Amato, M.D. ("Dr. Amato") concluded in his report (Def.'s Mot. for Summ J., Ex. E, at 2). Madden further avers that "Dr. Amato criticized both Dr. Pizarro and Dr. Norwood for their

5

handling of Mykenzie's hemi-Fontan surgery" (Pl.'s Resp. to Def.'s Mot. for Summ. J. 5 (hereinafter "Pl.'s Resp.")), and therefore that the role Dr. Norwood actually played in the surgery is a disputed, material fact.

Dr. Norwood counters that Dr. Amato's statements constitute "speculation that is not supported by any evidence in the record," and that neither the reason why Dr. Pizarro was the lead surgeon nor Dr. Pizarro's relative inexperience in performing the type of cardiac procedure Mykenzie underwent constitutes evidence that counters the evidence showing that Dr. Norwood only assisted in the surgery. (Def.'s Mot. for Summ J. 8-9; Def.'s Reply to Pl.'s Resp. 2-5.)

### 2. Analysis

The first issue is whether Delaware law allows a physician assisting in a surgery to be held liable for medical negligence. In correspondence requested and received by the Court, the parties' counsel agree that there is no precedent under Delaware law as to whether a primary surgeon alone may be held liable for medical negligence. As a result, the question this case presents of whether an assisting surgeon can be held liable for medical negligence under Delaware law is novel. The Court previously stated that such a novel legal issue should be decided on a full trial record, and not on summary judgment papers.

The Court has reexamined the relevant portions of the record in light of the oral argument that took place on December 17, 2009. The Court concludes that there is no genuine issue of material fact as to Dr. Norwood's role in the surgery in question. Dr. Norwood has identified several pieces of evidence indicating that he only assisted in the second surgical procedure. Mykenzie's medical charts listed Dr. Pizarro and Dr. Norwood as primary and assistant surgeons, respectively. (Def.'s Mot. for Summ. J., Ex. A, at 1.) Dr. Pizarro's deposition testimony

confirmed that Dr. Norwood was "assisting in the [second] surgery," because the surgeon who performed the first stage of the surgery, here Dr. Pizarro, usually performed the second stage surgery as well. (Pizarro Dep.162:7-22, Aug. 5, 2009, Def.'s Mot. for Summ J., Ex. A.) Dr. Pizarro also testified as follows:

> Q. It says here that Dr. Norwood assisted throughout the procedure. What does that mean? What does an assistant do in this type of surgery?
>
> A. What does an assistant do?
>
> Q. Yes.
>
> A. Well, the assistant assists.
>
> Q. Okay.
>
> A. So generally speaking, he'll participate in the surgery from the other side of the table and facilitate exposure, you know, facilitate the repair, et cetera.

(Pizarro Dep., 95:24-96:14, Aug. 9, 2006, Def.'s Mot. for Summ J., Ex. D.) Dr. Pizarro thus testified that as an assistant surgeon, Dr. Norwood's role was limited to exposing and repairing the surgical area. In addition, Dr. Norwood's testified at his deposition, in relevant part:

> A. The primary surgeon orchestrates the conduct of the surgery, and the assistant does what is necessary to help the primary surgeon accomplish his mission.
>
> Q. All right. So in this surgery on this patient, Mykenzie Madden, did you stand on the left or on the right side of the table?
>
> A. On the right-hand side.
>
> Q. And did you orchestrate the conduct of the surgery or did Dr. Pizarro?
>
> A. Dr. Pizarro was the primary surgeon on the left-hand side of the table and conducted the surgery.
>
> Q. Okay. So I think I understood that the surgery is done the same but your

>           role switches with the role of Dr. Pizarro?
>
>   A.      Yes.
>
>   Q.      Okay.
>
>   A.      It's distinctly different.

(Norwood Dep. 23:3-24:1 Sept. 2, 2009, Def.'s Mot. for Summ. J., Ex. B.)  Dr. Norwood then testified as follows:

>   Q.      From your experience with the patient, was there anything about her
>           anatomy that obviated the need for some type of collar or surgical setup
>           for stent completion"
>
>           . . .
>
>   A.      The first assistant doesn't really get an ideal view of the inside of the
>           atrium.  I mean, it's the assistant's job to give the primary surgeon that
>           particular view.
>
>           Being six years ago, I'm not sure I would recall even if I saw
>           something.  But for sure I wouldn't be able to see the area that I alluded to
>           when we were talking about that.

(Norwood Dep. 103:24-104:20.)  Dr. Norwood's testimony affirmed Dr. Pizarro's contention that Dr. Pizarro, as the primary physician, conducted and orchestrated the surgery (Norwood Dep. 23:3-24:1), and further averred that the first assistant could not even see the inside of the cardiac atrium being operated upon, because Dr. Pizarro had that view (Norwood Dep. 103:24-104:20.)  In light of Mykenzie's medical charts, and Dr. Pizarro and Dr. Norwood's depositions, this Court agrees with Dr. Norwood that all the evidence indicates that Dr. Pizarro, as primary surgeon, performed and directed the second stage of Mykenzie's surgery, including the cooling and bypass procedures, and that Dr. Norwood as Dr. Pizarro's assistant, did not do anything substantive.

On the other hand, Madden denies that Dr. Norwood only actually assisted in the second

surgery but only provides Dr. Amato's expert report in support. This report states in relevant part: "Dr. Pizarro was listed as the primary surgeon and Dr. Norwood assisted during the surgery. Given Dr. Norwood's superior experience with this procedure and his role as the team leader, even as the assistant surgeon it would be assumed that Dr. Norwood maintained a supervisory role over the surgery." (Def.'s Mot. for Summ J., Ex. E, at 2.) Dr. Amato also suggest that "Dr. Pizarro and Dr. Norwood departed from accepted standards of care in [several] respects" (Def.'s Mot. for Summ J., Ex. E, at 2), and thus, that Dr. Norwood's negligence contributed to Mykenzie's death.

Following the oral argument on December 17, 2009, the Court concludes that Dr. Amato's assumption, as noted above, is unwarranted and unsupported by the facts of record and should be disregarded. The undisputed facts are clear as to Dr. Norwood's role in the second surgery, and the actual facts of record negate any liability. Even though Delaware law has not established any rule specifically stating the circumstances under which an assistant surgeon can be subject to liability for medical negligence, there is no dispute as to the material facts and no evidence Dr. Norwood is responsible for any act or omission related to the unfortunate death. For this reason, the Court believes that whatever may be the standard under Delaware law for the liability of an assistant surgeon, in this case there are no facts under which Dr. Norwood could be liable under any theory of negligence. Thus, the Court concludes that there is no reason to withhold summary judgment in favor of Dr. Norwood as to the negligence claim.

### B. Lack of Informed Consent

The Delaware Supreme Court has clarified that "informed consent is statutorily defined [by 18 Del. C. § 6852(a)(2)] and requires the patient to demonstrate that the health care provider

9

failed to supply information concerning the treatment or procedure 'customarily given' by other' licensed health care providers with similar training and/or experience' in the community." Brzoska v. Olson, 668 A.2d 1355, 1365 (Del. 1995); see also 18 Del. C. § 6852(a)(2). "[A]n informed consent action . . . requires expert testimony as to causation." Valentine v. Mark, No. Civ.A. 02C-12-244PLA, 2004 WL 2419131, at *3 (Del. Super. Ct. Oct. 20, 2004); see also Del. C. §§ 6852-53.

1. **The Parties' Contentions**

Dr. Norwood contends that Dr. Pizarro alone was Mykenzie's surgeon and that "[t]here is no evidence that Dr. Norwood, as Dr. Pizarro's assistant, was responsible for obtaining consent from Mrs. Madden or . . . ever undertook that duty." (Def.'s Mot. for Summ. J. 9.) Dr. Norwood then avers that because "[t]he law clearly places the burden to obtain consent on the surgeon, and Mrs. Madden's expert acknowledges as much," no genuine issue of material fact exists respecting Madden's informed consent claim against Dr. Norwood and he is entitled to summary judgment relief. (Def.'s Mot for Summ. J. 9-10.)

Madden responds that Delaware law does not provide that "only the surgeon has the obligation to obtain proper, lawful informed consent, as say, opposed to the hospital where the surgery takes place," and relies upon Dr. Amato's criticism of both Drs. Norwood and Pizarro "for the fact that no one explained to Mrs. Madden the risks, benefits and alternatives to the hemi-Fontan." (Pl.'s Resp. 5-6.) Madden then avers that "Plaintiffs have evidence that both Dr. Pizarro and Dr. Norwood had . . . duties to obtain informed consent from the mother beforehand," and thus, that dismissal of the lack of informed consent claim against Dr. Norwood is inappropriate on summary judgment. (Pl.'s Resp. 6.)

In reply, Dr. Norwood contends that "Dr. Norwood had no duty as a matter of law to obtain consent from Ms. Madden," as Judge Schiller acknowledged in <u>Reger v. Nemours Foundation</u>, No. 05-CV-0661, Order, at 1, Docket No. 58 (E.D. Pa. Dec. 22, 2006) (Schiller, J.) (hereinafter "<u>Reger</u> Order") upon granting summary judgment in Dr. Norwood's favor respecting a lack of informed consent claim in a similar case. (Def.'s Reply to Pl.'s Resp. 5.) Dr. Norwood further alleges that Madden "did not look to [him] for guidance in treating Mykenzie" and testified at her deposition that she "never spoke to [him]." (Def.'s Reply to Pl.'s Resp. 5.) Dr. Norwood contends that with respect to the second surgery, Madden spoke with, and gave her written consent to, Dr. Pizarro. (Def.'s Reply to Pl.'s Resp. 5.) Dr. Norwood thereby maintains that he cannot, as a matter of law, be held liable under Delaware law for failure to obtain informed consent. In <u>Reger</u>, the Order of Judge Schiller entering judgment for the defendants was affirmed. <u>Reger v. DuPont Hospital for Children</u>, 259 Fed. Appx. 499 (3d Cir. 2008).

### 2. **Analysis**

This Court begins by examining whether Delaware law requires an assistant to a medical procedure to obtain the patient's informed consent. Madden has provided no case law or legislation to this effect, nor can this Court locate any. Instead, Delaware courts have focused upon "the relationship between physician and patient upon which a medical or surgical procedural must rest," in evaluating lack of informed consent claims, <u>Molnar v. Raffetto</u>, No. Civ. A. No. 87C-AP-109, 1990 WL 177592, at *1 (Del. Super. Ct. Oct. 31, 1990). Here, Madden conceded at her deposition that she "never spoke with [Dr. Norwood]" directly (Madden Dep. 39:3, Aug 4, 2009, Def.'s Reply to Pl.'s Resp., Ex. H). Madden also testified that before each of the first two surgeries, she spoke with Dr. Pizarro, and that she gave him her written

11

consent (Madden Dep. 63:16-64:16, 69:15-20). Madden's own testimony demonstrates that she had no relationship with Dr. Norwood, who had not participated in the first stage of the surgery, prior to the second surgery. Accordingly, the mere fact that Dr. Norwood assisted in Mykenzie's second surgery cannot impose a duty upon him to obtain Madden's informed consent under Delaware law; rather, as the Massachusetts Supreme Court explained, "[i]t would not be reasonable to require all of the individuals who only assist in the operating room to obtain the informed consent of the patient." Harnish v. Children's Hosp. Med. Ctr., 439 N.E.2d 240, 245 (Mass. 1982).

In addition, Madden's reliance upon the portion of Dr. Amato's expert report criticizing Dr. Norwood for the alleged failure to inform Madden as to the risks and experimental nature, and alternatives to the surgical procedure performed on Mykenzie, is misplaced. Absent evidence that Dr. Norwood had or undertook a duty to obtain Madden's informed consent, Dr. Amato's conclusion as to Dr. Norwood's negligence respecting informed consent is speculative, does not raise an issue of material fact, and therefore cannot preclude summary judgment relief in favor of Dr. Norwood.

At the argument on December 17, 2009, Plaintiffs' counsel was unable to support the claim of violation of Delaware's informed consent rules with any specific facts warranting denial of Dr. Norwood's motion under this count. In Reger, Judge Schiller dismissed lack of informed consent claims against Dr. Norwood when Dr. Norwood assisted Dr. Pizarro in another young child's cardiac surgery on the basis that "it is further undisputed that medical custom requires that the lead surgeon obtain informed consent from their patients. Because Dr. Norwood had no previous contact with [Plaintiffs] and he was not the lead surgeon on [the] procedure, . . . Dr.

12

Norwood cannot be held liable for failure to obtain informed consent." <u>Reger</u> Order, at 2 n.1. In this case, as detailed above, this Court reaches the same conclusion, determining that there is no legal or factual basis for holding Dr. Norwood liable for failing to obtain Madden's informed consent, and thus, that Dr. Norwood's motion for summary judgment should be granted.

**V.     Conclusion**

For the foregoing reasons, Dr. Norwood's Motion for Summary Judgment will be granted.

An appropriate Order follows.

O:\CIVIL\05-787 Madden v. DuPont\05-787 Madden - Memorandum MSJ.wpd